Last argument for today is case number 21-672, Szewczyk v. Sakian. Danuta Szewczyk Yes, Danuta Szewczyk You can take your mask off while you're at the podium. The mask is optional at the podium? Yeah, okay. And you can make sure the microphone is lowered for you. Okay. We can probably just pull it down. Okay. Perfect. Now say your name again. It's okay? And now you're hearing me? We can hear you. Say your name one more time. Danuta Szewczyk Szewczyk Szewczyk Okay, got it. Proceed when you're ready. Okay. This is the case returning back to appellate court because I feel that there is no justice. I was attacked during the interview by the one city employee, Director Tamara Sakian, physically. And there is no justice because the lawyers who protect defendants, they never even go to that issue, totally ignoring that fact. I was attacked because I'm Polish and that woman is Soviet-trained Russian. She hired to what I learned after that interview, she tried to poke my eye out without reason. When she found out that I was from Poland and that issue was never, it was totally ignored by the lawyers. Let me step back a section. Isn't it true that the person who got the job you interviewed for had more experience at roof examinations than you did? And that's what the job was for? This is what they say, but the application of Mr. Luck, the person who was actually hired, because there were two steps. I was not even introduced to the next step to speak with, they say that Mr. Piggott, Thomas Piggott, who liked Russians. He tried to, he did the final decision, the lawyers, they were telling them. But you didn't answer my question. Isn't it true that the person that got the job had experience inspecting roofs and that's what the job was for? And you didn't have comparable experience? No, it's not the truth. Okay, tell me what's wrong. Because I was, what's wrong? Because I never was asked questions. During the interview, I was not even asked questions about the roof experience. If I were asked questions, I would tell them. But I was never asked that type of questions. I was asked about the hazmat rules, which I answered. It was on my resume, too, also. But I was never asked that professional questions. But I was pointed out, the first was, you're from Poland. The second was when somebody on the panel looked into my resume and found out that I also have a master's degree from the United States, New Jersey Institute of Technology. The woman, the Russian woman, she got so angry that she started asking questions about the age-related questions. Those two. And it was not stopped on one question. She tried to, like, pulling, I am older. I was 58 years old. And I was not 20 or 22 years old. But she tried to attack me with her fingers. She was like a Manchurian syndrome. Something clicked into her head and she had to attack. It was like training by KGB because I didn't give her any reason. I had to swing. I had to swing from that attack. And swing away. And this question was never asked by the lawyers, never mentioned by the court, also. And also the fact that I was, for seven years before the interview, I was continuously being rejected by the city of New York. Continuously. I had several interviews and they always found somebody's ass and they told me, steering me, that I have to get a professional engineering license. It was not necessary for the Russian people who they were hiring, people coming from Russia, who they were hiring. So I lost, like, since 2007, I lost seven years of experience being bumped through the wall. Trying to break that wall and being so patient, trying to... But I never met the person who could physically attack me. And the judge, Brody, he refused. Finally, I found out the motive of this woman. Some relative from her family was killed in Georgia. He was an Armenian politician who was killed with the same first name and last name, Zumpat Saakyan. And I gave the information to the judge. To the judge. And also I gave her the information. So this woman was unstable. And there was situation, political situation, because I came to 87, so 94, that Zumpat Saakyan was killed. And I had nothing to do. Why should I be attacked by that Russian person? Because I was Paul? She hired two males who were interviewed as the first one. And Mr. Luck, on his missing application, they refused to show his application, which everybody signed. They showed his resume. It looked like the resume looked like cut and paste. Cut and paste, like somebody was... So the resume could be... This is the answer. I don't believe in that resume. It must be prepared later. I have the brief, which I sent to the judge about the continued discrimination. It was on April 30, 2018. Right, we have the papers. We have what you submitted. We have what you submitted. This is what you submitted for appellate court. But before the appellate, the previous appellate, which I had 18-1333, I gave to the judge that list of job searches and struggles which I had with the city of New York. And she never read it, because she mentioned that I don't have evidence, facts. On the last judgment, there is missing evidence. I don't have factual material. We have your argument and your papers, and we'll hear now from the city of New York. Thank you. And this is 15 years of struggle. 15 years. Thank you, Ms. Czechuk. Thank you. Ms. Moon. May it please the court, I'm Chloe Moon for appellees. To begin, this court has already rejected all but plaintiff's sex and age discrimination claims, including plaintiff's New York City human rights age discrimination claim on the previous appeal. Which entity that suit do you represent? Who do you represent? Sorry, all the appellate, well, Seekian as well as Audrey Brown Bennett, now Townsend, and the city of New York. New York to New York, all defendants. Sorry, Seek, yes. Thanks. Thank you. On remand, the district court correctly dismissed on summary judgment plaintiff's remaining sex and age discrimination claims. We believe that decision was correct for two primary reasons. First, even assuming that she made out her prima facie case on sex and age discrimination claims, the defendants articulated a legitimate non-discriminatory reason that this court has already found in the prior appeal. That the other- Is that the question that I asked, that they had more experience for this specific job? Absolutely, that is the reason, the better prior experience. But a plaintiff just told us they never asked her about experience during the interviews. They were interested in other things that were, seems to me, irrelevant, like racial background. So the declarations of the HR employees who are observing the interviews said that they asked a consistent set of questions amongst all the applicants about their experience. And so I would imagine, although I'm not exactly sure what questions they asked, that they went through her resume, which doesn't highlight her inspection experience. And the resumes of the two candidates who did make it past the first round of interview had that very clear daily inspection report. So they were in the resume and not the interview, is that what you're saying? It seemed from the declarations that they relied on both the resumes and the interviews. And that the resume itself didn't show any of this inspection experience. Apart from a mention of an inspection experience from the 1980s doing boring inspections. And so that directly relevant and applicable and recent experience of Lack and Noki, the two candidates who were passed on to the second round, is the legitimate non-discriminatory reason. Are the resumes in the record? They are. The resumes are at ECF 87 for Lack and Noki, and plaintiff's resume is also in that. And then in response, plaintiff cannot show that the reason is pretextual, because in this context, she would have to show that her credentials are so far superior that no reasonable person would have hired Lack or Noki over her. And they simply can't do that here. The decision to pass Lack and Noki on to the next round is not unreasonable. So Ms. Cheskip makes disturbing allegations about the course of the interviews. Can you speak to that? Yeah, so I did. I read her deposition on that matter, and it did sound like there was no contact made that she had moved away. I can't say personally what exactly happened there, but I do know that she used that anecdote in her race discrimination claims, which this court has already rejected on summary judgment.  I believe this court has already addressed it. For those reasons, we ask this court to affirm. Thank you. Thank you both. We'll take the case under advisement. That concludes our arguments for today. I'll ask the courtroom deputy to adjourn.